# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| CARMELA ROMERIO,<br>　　　　　　Appellant, | DOCKET NUMBER<br>DE-1221-24-0014-W-1 |
| 　　　　v. | |
| DEPARTMENT OF THE INTERIOR,<br>　　　　　　Agency. | DATE: February 6, 2025 |

## THIS ORDER IS NONPRECEDENTIAL[1]

Carmela Romerio, Boulder, Montana, pro se.

Jennifer K. Trujillo, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman*
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member**

*The Board members voted on this decision before January 20, 2025.
**Member Kerner recused himself and
did not participate in the adjudication of this appeal.

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Denver Field Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was employed by the agency's Bureau of Land Management (BLM). Initial Appeal File (IAF), Tab 8 at 533. Effective March 31, 2019, BLM processed her request for a voluntary downgrade from the position of GS-12 Vegetation and Resource Specialist located in Billings, Montana, to the position of GS-11 Rangeland Management Specialist in BLM's Butte Field Office in Butte, Montana. *Id.* At the time of her transfer to the GS-11 position, the position was designated as low risk and nonsensitive. *Id.* On or before May 8, 2020, the agency raised the risk level to moderate risk. *Id.* at 217-19.

On July 21, 2022, the agency's Office of Security Operations (OSO) sent the appellant an email requesting that she complete a Standard Form 85P, Questionnaire for National Security (SF-85P), in the Electronic Questionnaires for Investigations Processing Gateway (e-QIP) as part of the process of conducting her periodic Tier 4 (T4) background investigation. *Id.* at 87-88. The appellant's supervisor followed up via email and telephone with the appellant the same day, instructing her to complete the form in e-QIP within 5 days. *Id.* at 87, 163-64. On July 27, 2022, the appellant's first-level supervisor clarified that only a Tier 2 (T2) background investigation was required. IAF, Tab 8 at 97-98. From late July to late September 2022, the appellant told her supervisor and other agency officials both verbally and via email that the request for her to complete information in e-QIP was in error because her position only required a Tier 1 (T1) background investigation, which she had completed in 2018. *Id.* at 93, 97, 164-68.

The agency responded to the appellant's concerns and reiterated the instruction that she complete the T2 background investigation; however, she did

not complete the required form in e-QIP. *Id.* at 93, 97-98, 102, 118, 132-35, 155, 161-62, 164-68. As a result, the agency removed her effective April 28, 2023. IAF, Tab 2 at 7-34. The agency's letter to the appellant memorializing its removal decision provided her with, as relevant here, the options of filing an appeal with the Board or seeking corrective action before the Office of Special Counsel (OSC). *Id.* at 31-32.

The appellant filed a complaint with OSC on May 12, 2023, alleging that the agency removed her in retaliation for disclosing that the requested T2 background investigation was not a requirement for her position and for declining to participate in the investigation. IAF, Tab 9 at 8-9, 15. By letter dated August 10, 2023, OSC closed its investigation into the appellant's complaint and advised her that she could file an appeal with the Board. *Id.* at 8-9. She then filed the instant appeal challenging her removal and alleging that it was taken in reprisal for protected disclosures and activity. IAF, Tab 1.

The administrative judge dismissed the appeal for lack of jurisdiction. IAF, Tab 16, Initial Decision (ID) at 1, 6. He found that the appellant exhausted her claim at OSC that her removal was in reprisal for making a protected disclosure about the agency's insistence that she complete the T2 background investigation. ID at 3-4. However, the administrative judge found that the appellant did not make a nonfrivolous allegation that her disclosure was protected. ID at 5-6. He concluded that she did not nonfrivolously allege that she reasonably believed she was disclosing an actual violation of any law, rule, or regulation. ID at 5-6 & n.7. He further determined that the appellant's allegation that the background investigation was gross mismanagement or a gross waste of funds was both conclusory and vague. ID at 6.

The appellant has filed a petition for review and submitted a number of documents. Petition for Review (PFR) File, Tabs 1-4. The agency has filed a response. PFR File, Tab 7.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant has nonfrivolously alleged that she made a protected disclosure.</u>

The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

*We modify the administrative judge's exhaustion finding.*

The administrative judge concluded that the appellant exhausted with OSC her alleged disclosure that the agency improperly required her to undergo a T2 background investigation.  ID at 2-4.  The parties do not dispute this finding on review, and we discern no basis to disturb it.  However, the appellant reasserts on review that the agency also retaliated against her for engaging in activity protected under 5 U.S.C. § 2302(b)(9)(D).  PFR File, Tab 1 at 9; IAF, Tab 1 at 2. The administrative judge did not address this claim.  We modify the initial decision to find that the appellant exhausted this alleged protected activity.

An appellant must prove by preponderant evidence that she exhausted administrative remedies with OSC before seeking corrective action from the Board.  *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 5.  The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation.  *Id.*  Section 2302(b)(9)(D) of Title 5 prohibits reprisal for "refusing to obey an order that would require the individual to violate a law, rule, or regulation."  *McCray v. Department of the Army*, 2023 MSPB 10, ¶ 15 (quoting the statute).  In its letter advising the appellant that it was closing its investigation into the appellant's complaint, OSC

acknowledged that she had claimed that her removal was in reprisal for "declin[ing] to participate" in the background investigation based on her belief that it was not "a requirement of [her] position." IAF, Tab 2 at 38. Because she provided OSC with sufficient information to investigate this claim, we find that she exhausted it.

*The appellant nonfrivolously alleged that she made a protected disclosure.*

The appellant realleges on review that she made a protected disclosure. PFR File, Tab 1 at 4-6, 9. We disagree with the administrative judge that her allegations were not nonfrivolous. ID at 5-6.

A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced any violation of law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.[2] 5 U.S.C. § 2302(b)(8); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 8 (2013). The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced such wrongdoing. *Salerno*, 123 M.S.P.R. 230, ¶ 6 (citing *LaChance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)). The disclosures must be specific and detailed, not vague allegations of wrongdoing. *Id.*; *see El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015) (stating that vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard needed to establish the Board's

---

[2] The appellant argues on review that the administrative judge failed to inform her of her burden to nonfrivolously allege her claim. PFR File, Tab 1 at 4, 6. We disagree. The administrative judge issued a jurisdictional order that set forth the applicable standard. IAF, Tab 4 at 3.

jurisdiction over an IRA appeal), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016).

The administrative judge found that the appellant did not make a nonfrivolous allegation that she reasonably believed that the agency's determination to conduct a T2 background investigation violated a law, rule, or regulation.[3] ID at 5-6. The appellant continues to argue on review that BLM violated "the rules of a protected employee's rights." PFR File, Tab 1 at 9; IAF, Tab 9 at 5. For the following reasons, we conclude that the appellant made a protected disclosure on July 25 and 26, and August 1 and 2, 2022, that the agency violated a law, rule, or regulation by requiring her to complete a T4 or T2 background investigation because, at that time, she reasonably believed that her position required only a T1 background investigation. IAF, Tab 8 at 93, 97, 164-66.

In finding that the appellant did not meet her burden, the administrative judge faulted the appellant for not identifying "what rule or rules the agency violated." ID at 6. However, an employee need not identify "a statutory or regulatory provision by title or number, when the employee's statements and the circumstances surrounding the making of those statements clearly implicate an identifiable law, rule, or regulation." *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001). In any event, in an email to the agency, the appellant specifically asserted that the agency violated the reciprocity requirements of the Office of Personnel Management set forth at 5 C.F.R.

---

[3] According to the appellant, the "security clearance" portion of her T2 background investigation was what distinguished it from a T1 background investigation. PFR File, Tab 1 at 5. She clarifies that it was the "security clearance" portion of her T2 background investigation – rather than the investigation as a whole – to which she objected. *Id.* at 4-6. To the extent she asserts that the administrative judge erred in characterizing her claim as an objection to any background investigation, we are not persuaded. *Id.* at 6. The administrative judge correctly quoted the appellant's argument that she disclosed that "[t]he [background investigation] requiring a security clearance was erroneous." ID at 3 (quoting IAF, Tab 9 at 6).

§ 731.202(d). IAF, Tab 8 at 97. That provision prohibits an agency from making a new suitability determination absent certain specified exceptions. 5 C.F.R. § 731.202(d).

A "suitability determination" is "a decision . . . that a person is suitable or is not suitable for employment" in, as applicable here, a competitive service position like the appellant's. 5 C.F.R. § 731.101(b); IAF, Tab 8 at 533. To the extent that the appellant improperly conflated a suitability determination with a background investigation, we find that the appellant has nonfrivolously alleged that a reasonable person in her position, without any specialized legal experience, could have failed to distinguish between the two interrelated processes. *See Mudd*, 120 M.S.P.R. 365, ¶ 9 (considering an appellant's lack of any special expertise in legal matters or other experience in interpreting agency regulations in determining that a reasonable person in her position could reasonably conclude that she disclosed evidence of a violation of a law, rule, or regulation). In particular, the phrase "background investigation" is not defined in OPM's suitability regulations, and thus, its distinction from a suitability determination is not readily apparent to the non-legal professional. *See generally* 5 C.F.R. pt. 731; *e.g.*, 5 C.F.R. § 731.106(c)(1) ("Persons receiving an appointment made subject to investigation under this part must undergo a background investigation.").

The appellant asserted to the agency that it could not require a background investigation under section 731.202(d) unless, per the regulation, "[she] show[ed] conduct that [was] incompatible with the core duties of the relevant covered position." IAF, Tab 8 at 103; *see* 5 C.F.R. § 731.202(d). However, the same regulatory provision clearly states that it also permits a new suitability determination when an investigation is required under 5 C.F.R. § 731.106. 5 C.F.R. § 731.202(d). Section 731.106(e) requires that agencies initiate reinvestigations within 14 days of a change in an employee's risk level. The agency has a similar reciprocity policy that states that "[a] re-investigation is not required" when an employee already completed a favorable background

investigation "for the sensitivity or her risk level" of her position. IAF, Tab 8 at 264. However, similar to OPM's regulations, the agency's policy also states that if the risk level of an incumbent's position has increased, the agency must initiate a new background investigation within 14 days. IAF, Tab 8 at 252, 254. The agency raised the risk level of the appellant's position from low to moderate risk in or prior to May 2020. IAF, Tab 8 at 102, 217, 219. Thus, contrary to the appellant's statements to the agency, it did not err in initiating a background investigation. If anything, it waited too long to initiate the investigation by waiting until July 2022, more than 14 days after the risk level increased.

However, in making her initial disclosures, the appellant indicated that she believed her position remained "low risk," requiring only a T1 background investigation. IAF, Tab 9 at 4, Tab 8 at 93, 97. The reasonableness of this understanding is supported by the SF-50 memorializing her voluntary downgrade, which reflects that her position was designated as "nonsensitive/low ri[sk]." *Id.* at 253, 533. Agency guidance on investigations provides that "[a] Tier 1 remains valid for 10 years." IAF, Tab 8 at 185, 187. The appellant indicated in her disclosures to the agency that she understood her last T1 background investigation was in 2018. IAF, Tab 8 at 93. We conclude that the appellant has nonfrivolously alleged that a reasonable person in her position could have read OPM's regulations and agency policy and guidance as prohibiting a T2 investigation because it could not reinvestigate her prior to 2028, 10 years after her last investigation. *See Mudd*, 120 M.S.P.R. 365, ¶ 9.

The appellant's belief was reasonable, however, only so long as she was unaware that the risk level for her position had been upgraded. IAF, Tab 8 at 93, 97, 164-66, 217, 219. On August 2, 2022, an OSO Supervisory Personnel Security Specialist emailed the appellant advising her that her position had been reevaluated as moderate risk, requiring a T2 background investigation. *Id.* at 102. He provided the appellant with an updated position designation record dated May 8, 2020, reflecting the increased risk level and T2 investigation requirement.

*Id.* at 102, 217-19. Therefore, to the extent she made disclosures after August 2, 2022, she has not identified a reasonable basis for her assertions that the background investigation request violated a law, rule, or regulation.

The appellant alleges that, between August 2 and September 22, 2022, she disclosed that "upgrading [her] position description without [a] formal desk audit" was improper. PFR, Tab 1 at 9; IAF, Tab 9 at 5. The record contains an agency policy requiring desk audits "when an employee's assignments and responsibilities have expanded," "when requested by management," "when requested by an employee as part of a complaint process," and "for a classification appeal." IAF, Tab 8 at 303. The appellant has not identified any of these criteria that apply here or explained why she believes any of these criteria could apply. Thus, the appellant has not alleged facts that, if true, could prove that a reasonable person in her position could believe that her disclosures between August 2 and September 22, 2022, evidenced a violation of the desk audit policy or constituted any other potential category of wrongdoing under 5 U.S.C. § 2302(b)(8). *See Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 7 (finding that an appellant's vague and nonspecific allegations of disclosures of wrongdoing were insufficient to constitute nonfrivolous allegations).

The appellant also reasserts that the requirement that she complete the T2 background investigation was a "gross mismanagement of funds." PFR File, Tab 1 at 10; IAF, Tab 9 at 6. The administrative judge was not persuaded, and neither are we. ID at 6.

A gross waste of funds is an expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government. *MaGowan v. Environmental Protection Agency*, 119 M.S.P.R. 9, ¶ 7 (2012); *see Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 9 (2015) (clarifying that an expenditure that is debatable among reasonable people is not precluded from qualifying as a protected disclosure of a gross waste of funds) (citing S. Rep. No. 112-155 at 10 n.37 (2012) (indicating that a requirement that a gross waste of

funds be more than debatable among reasonable people is inconsistent with the "reasonable belief" standard for disclosures under 5 U.S.C. § 2302(b)(8)). Gross mismanagement is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 24.

An appellant's allegations that she reported to the agency gross mismanagement and a gross waste of funds without further details is conclusory and does not satisfy the nonfrivolous allegation standard. *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 9 (2016). Here, the appellant's allegations are conclusory in that she merely recites language from 5 U.S.C. § 2302(b)(8). She has not claimed or provided evidence that she told the agency or OSC that conducting her T2 background investigation required any particular expenditure, that such an expenditure was not worth the resulting assurance as to her ability to occupy her position, or that a background investigation was contrary to, or could impede, the agency's mission. IAF, Tab 8 at 93, 97, 164-68, Tab 9 at 6, 8-9; PFR File, Tab 1 at 10. Accordingly, we agree with the administrative judge's determination that the appellant failed to nonfrivolously allege that her disclosures evidenced gross mismanagement or a gross waste of funds.

Because the administrative judge did not consider whether the appellant nonfrivolously alleged that the agency violated a law, rule, or regulation by instructing her to complete the SF-85P, we do so here. An employee's refusal to obey an unlawful order is a protected activity under 5 U.S.C. § 2302(b)(9)(D). However, as explained here, the agency acted consistent with OPM's regulations and its own policy by conducting a background investigation based on the increased risk level of the appellant's position. Therefore, the appellant's allegations, even if true, could not establish that the agency's instructions were unlawful.

*The appellant nonfrivolously alleged that her protected disclosure was a contributing factor in her removal.*

An appellant may meet her jurisdictional burden regarding the contributing factor element if she nonfrivolously alleges that the official who took or threatened to take the personnel action at issue knew of the protected whistleblowing disclosures or activity and that the personnel action occurred within 1 to 2 years of the disclosures or activity. *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 20. The agency's February 23, 2023 proposed removal, and April 28, 2023 removal decision, provided a factual background that described the appellant's statements to the agency between July 25 and August 2, 2022, that her position did not require a T2 background investigation. IAF, Tab 2 at 7-9, 20, 22-23. Because the agency officials who proposed and issued the appellant's removal were aware of her disclosure, and the agency removed her within 1 year of her disclosure, she has met her jurisdictional burden concerning the contributing factor element of her claim. Accordingly, she has established IRA jurisdiction over her appeal.

The appellant did not make a knowing and informed election to file an OSC complaint followed by an IRA appeal.

On her initial appeal form, the appellant challenged her removal on a number of bases, including disagreeing with the agency's charges, claiming whistleblower reprisal, alleging that the agency violated merit systems principles, and disputing the penalty. IAF, Tab 1 at 2-3. The administrative judge found that the appellant made a knowing election to pursue the IRA appeal process and therefore determined that the Board lacks jurisdiction over her removal under chapter 75. ID at 2 n.3. On review, the appellant argues that because she is an employee who was subject to an adverse action, the Board has chapter 75 jurisdiction over her appeal. PFR File, Tab 1 at 6-8; IAF, Tab 8 at 34. We find that the appellant did not make a knowing and informed election, and therefore, we remand this appeal so that she may do so.

An employee subjected to an action appealable to the Board who alleges that the contested action was taken in reprisal for whistleblowing may elect to pursue a remedy through only one of the following remedial processes: (1) an appeal to the Board under 5 U.S.C. § 7701; (2) a grievance filed under an applicable negotiated grievance procedure; or (3) a complaint seeking corrective action from OSC under 5 U.S.C. §§ 1211-1222, followed by an IRA appeal. 5 U.S.C. § 7121(g); *Requena v. Department of Homeland Security*, 2022 MSPB 39, ¶ 7; 5 C.F.R. § 1209.2(d)(1). The remedy first sought by an aggrieved employee is deemed an election of that procedure and precludes pursuing the matter in other fora. *Requena*, 2022 MSPB 39, ¶ 8. For adverse actions appealable to the Board under 5 U.S.C. §§ 4303 and 7512, an employee's election of remedies under 5 U.S.C. § 7121(g) must be knowing and informed, and, if it is not, it will not be binding upon the employee. *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 16 (2013).

In the context of a chapter 75 removal appeal, the Board has held that when an agency did not explicitly inform the appellant in its decision letter that her election to proceed with a grievance would preclude her subsequent Board appeal, her election to first file a grievance was not knowing and informed and did not waive her right to file a Board appeal. *Kaszowski v. Department of the Air Force*, 2023 MSPB 15, ¶ 7. Although that case concerned an election of remedies under 5 U.S.C. § 7121(e)(1), the Board has found that the requirement of making a knowing and informed election is also applicable to elections under section 7121(g). *Agoranos*, 119 M.S.P.R. 498, ¶ 16. Therefore, as with an election under section 7121(e)(1), an election under 7121(g) is knowing and informed only if an agency explicitly advises an appellant of the preclusive effect of first filing, as applicable here, an IRA appeal or OSC complaint. *Agoranos*, 119 M.S.P.R. 498, ¶ 16.

The agency's April 28, 2023 removal decision advised the appellant of her right to file a Board appeal or an OSC complaint. IAF, Tab 2 at 31-32. As to the election between the two options, the decision letter stated:

> You may seek corrective action before [OSC] . . . . However, if you do so, your appeal will be limited to whether the Agency took one or more covered personnel actions against you in retaliation for making protected whistleblowing disclosures. You will be forgoing the right to otherwise challenge this removal.

*Id.* at 32.

Missing from the agency's explanation of the appellant's options was the crucial information that filing an OSC complaint first was a binding election of that procedure. Further, although the above language suggested that the appellant's decision to proceed before OSC was preclusive of a direct appeal to the Board, it did not expressly or clearly state as much. The agency advised the appellant that she could also file an equal employment opportunity (EEO) complaint and that "whichever action [i.e., a Board appeal or an EEO complaint] is filed first shall be considered your election to proceed in that forum"; however, it did not include this same information regarding her election between an OSC complaint and a direct appeal to the Board.[4] *Id.*

On remand, the administrative judge should provide the appellant with information regarding the consequences of electing to proceed with a chapter 75

---

[4] On review, the appellant refers to her appeal as a "mixed case." PFR File, Tab 1 at 6. A mixed case arises when an appellant has been subject to an action that is appealable to the Board and she alleges that the action was effected, in whole or in part, because of discrimination. *Miranne v. Department of the Navy*, 121 M.S.P.R. 235, ¶ 8 (2014). Because the appellant has not alleged discrimination or reprisal under EEO statutes, her appeal is not a "mixed case." Similarly, both below and on review, the appellant has referenced the Uniformed Services Employment and Reemployment Right Act (USERRA). PFR File, Tab 1 at 9; IAF, Tab 9 at 4. The administrative judge found that, although the agency's pleadings advised the appellant of how to establish jurisdiction over such a claim, she failed to do so. ID at 2 n.1 (citing IAF, Tab 8 at 30-31). The appellant still has not addressed the elements of a USERRA claim on review. Therefore, we do not consider it further. If the appellant elects to proceed with a chapter 75 appeal, the administrative judge should provide her with an opportunity to raise these claims as affirmative defenses.

appeal versus an IRA appeal of her removal and permit her to make an election. If the appellant elects to proceed under chapter 75, she may challenge the merits of her removal and pursue her arguments that her removal was contrary to law; that the agency committed prohibited personnel practices and violated merit systems principles and her due process rights; and dispute the removal penalty. PFR File, Tab 1 at 4-6, 8; *see Agoranos*, 119 M.S.P.R. 498, ¶ 18 (recognizing that, while an IRA appeal is limited to a claim of whistleblower reprisal, a direct appeal to the Board may include the merits of the personnel action, which the agency bears the burden of proving; denial of due process; discrimination; harmful procedural error; and other prohibited personnel practices); *Hall v. Department of Defense*, 117 M.S.P.R. 687, ¶ 6 (2012) (observing that in an adverse action appeal, the agency generally must prove its charge, establish a nexus between the action and the efficiency of the service, and establish that the penalty it imposed is within the tolerable bounds of reasonableness).

Because we are remanding this appeal, we do not reach the appellant's argument that the administrative judge failed to address additional alleged personnel actions that preceded her removal. PFR File, Tab 1 at 5-6. However, if on remand the appellant proceeds to challenge the actions leading up to her removal, and she can establish IRA jurisdiction over those actions, the administrative judge should adjudicate those matters. To avoid complicating the issues raised in the instant appeal and confusing the parties, the administrative judge should adjudicate all of the appellant's claims in one appeal, regardless of whether she elects to challenge her removal as an adverse action under chapter 75 or as an IRA appeal. *See Lentz v. Merit Systems Protection Board*, 876 F.3d 1380, 1382, 1385-86 (Fed. Cir. 2017) (concluding that the Board's bifurcation of an appeal of an alleged constructive removal into two separate appeals, one under chapter 75 and one under the Uniformed Services Employment and Reemployment Rights Act, was error because it resulted in a failure to consider the totality of the evidence).

<u>We decline to consider the documents that the appellant submits on review.</u>

The appellant submits numerous documents on review. PFR File, Tabs 1-4. Under 5 C.F.R. § 1201.115(d), the Board may grant review on the basis of new and material evidence that, despite due diligence, was not available when the record closed. To the extent that the appellant resubmits documents contained in the record below, these documents are not new. *Compare* IAF, Tab 10 at 11-13, Tab 11 at 5-7, *with* PFR File, Tab 1 at 17-19, Tab 4; *see Fletcher v. Office of Personnel Management*, 118 M.S.P.R. 632, ¶ 11 (2012).

The appellant has also submitted, for the first time on review, copies of a document reflecting that the agency terminated her access credentials in August 2022 and a copy of an SF-85P with handwritten responses dated September 2022. PFR File, Tab 1 at 13-16, 20-61, Tab 2. The Board will not grant a petition for review based on new evidence absent a showing that it is of sufficient weight to warrant an outcome different from that of the initial decision. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

The SF-85P does not impact our decision because it is not relevant to the dispositive jurisdictional and election of forum issues before us here. Rather, it pertains to the merits of the agency's actions, i.e., whether it was justified in removing her for failure to complete the form as instructed. IAF, Tab 7 at 9-10, Tab 8 at 134. Similarly, the appellant claims on review that the agency improperly revoked her access credentials and sent notification to her using outdated contact information, but she does not allege that she made a protected disclosure concerning these matters. PFR File, Tab 1 at 6. Therefore, her documentation related to the loss of her access credentials is not material to our decision here. It may, however, be relevant on remand to a claim that revocation of her access credentials was reprisal for whistleblowing. IAF, Tab 2 at 38. On remand, the appellant may submit these documents into the record consistent with the orders of the administrative judge.

**ORDER**

For the reasons discussed above, we remand this case to the field office for further adjudication in accordance with this Remand Order. On remand, the administrative judge should hold the appellant's requested hearing on the merits of her appeal. IAF, Tab 1 at 1; *see Salerno*, 123 M.S.P.R. 230, ¶ 5 (stating that once an appellant establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim); *Sabio v. Department of Veterans Affairs*, 124 M.S.P.R. 161, ¶ 24 (2017) (recognizing an appellant's right to a hearing in any appeal brought before the Board under any law, rule, or regulation).

*Gina K. Grippando*

FOR THE BOARD: _____
Gina K. Grippando
Clerk of the Board

Washington, D.C.